James L. ROGERS, III, et al.,
Plaintiffs-Appellants,

v.

TENNESSEE VALLEY AUTHORITY,
Defendant-Appellee.

No. 81–5638.

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1982.

Decided Nov. 3, 1982.

Rehearing Denied Jan. 25, 1983.

J. Granville Clark, Russelville, Ky., for plaintiffs-appellants.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Associate Gen. Counsel, Robert C. Glinski, Melvin L. Harper, Tennessee Valley Authority, Knoxville, Tenn., for defendant-appellee.

Before MERRITT, Circuit Judge, and PHILLIPS and CELEBREZZE, Senior Circuit Judges.

PHILLIPS, Senior Circuit Judge.

This is an action to enjoin the Tennessee Valley Authority from exercising its eminent domain powers to condemn land presently owned by the plaintiffs. The defendant Tennessee Valley Authority (TVA) filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted and in the alternative moved for summary judgment under Rule 56. District Judge Thomas A. Ballantine, Jr., granted the motion to dismiss on the ground that plaintiffs' claim of equitable estoppel could not be asserted against the TVA in the exercise of its eminent domain powers. On this appeal we assume that plaintiffs have stated a claim for relief but find that they failed to establish any genuine issue of material fact as to whether they are entitled to recover under such a claim. We, therefore, affirm the decision of the district court.

## I

The plaintiffs are a group of landowners residing in Muhlenberg County, Kentucky. They filed this action on May 7, 1981, alleging that TVA was "threatening to take the land [by condemnation] north of Highway No. 176 that would interfere with the use of the railroad facilities and to take land that would make the barge loading facilities of the plaintiffs unusable." The plaintiffs sought to enjoin TVA from condemning this land, alleging that on two prior occasions TVA had orally assured the plaintiffs that it would not condemn the land north of Highway 176.

The two prior occasions involved previous condemnation proceedings initiated by TVA against land owned by the plaintiffs or their predecessors in interest. The first occurred in 1960, when TVA sought to acquire the title to land situated south of the Green River near the town of Paradise, Kentucky, which eventually became the site of TVA's Paradise Steam Plant. On March 11, 1960, TVA, the plaintiffs and other parties entered into a written agreement transferring the title of the land to TVA in exchange for compensation and certain mineral rights and agreements not relevant to this proceeding. The plaintiffs in the present action allege that at the time of the written agreement of March 11, 1960, TVA officials orally assured the plaintiffs that TVA would not condemn land north of Highway 176.

In 1977 the plaintiffs sued TVA for trespass arising out of TVA's mining operations on land south of Highway 176. TVA thereupon commenced eminent domain proceedings against the land. The parties again entered into a written agreement settling their dispute, and plaintiffs allege that TVA again reiterated its oral agreement not to condemn land north of Highway 176.

The plaintiffs contend in the present action that TVA should be estopped from proceeding with the condemnation currently contemplated, because of its prior oral assertions to the plaintiffs that this land would not be condemned.

TVA filed a "Motion to Dismiss, or in the Alternative, for Summary Judgment" on July 8, 1981. In its memorandum supporting the motion, TVA argued, first, that even assuming that TVA had made the alleged oral agreements, estoppel could not arise against TVA in the exercise of its eminent domain function, because this was a sovereign function of the United States acting through its agency. TVA, accordingly, argued that the plaintiffs' complaint failed to state a claim upon which relief could be granted, and that it should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Alternatively, TVA argued for summary judgment, submitting affidavits from the TVA Assistant General Counsel and from the TVA attorney involved in the prior settlement of the 1977 dispute. In these sworn affidavits, the affiants asserted that no oral agreements had been made and that

the TVA Board had never authorized any TVA employee to agree to limit TVA's right or authority to acquire property in Muhlenberg County.

Plaintiffs filed a "Response to Motion to Dismiss and Motion for Summary Judgment" on July 20, 1981. They filed no affidavits or other documents, and stated in their memorandum that "the facts as set forth in the verified complaint are relied on in support of the plaintiffs' contention insofar as these two motions are concerned." Plaintiffs offered in this Response legal arguments in support of the contention that the doctrine of estoppel would be applicable in the present case.

District Judge Ballantine granted TVA's motion to dismiss. He found that "the power to appropriate private property to public use is an attribute of sovereignty." Citing *United States v. 0.5 Acres of Land in Anderson County, Tennessee,* 228 F.Supp. 674, 675 (E.D.Tenn.1962), the district judge held that "Estoppel does not arise against TVA in the exercise of a sovereign function." Judge Ballantine distinguished the plaintiffs' authorities and dismissed the complaint under Fed.R.Civ.P. 12(b)(6).

## II

It is well established that the exercise of the power of eminent domain for the public good is a sovereign function of government which has been validly delegated to the Tennessee Valley Authority. *U.S. ex rel. TVA v. Welch,* 327 U.S. 546, 553–54, 66 S.Ct. 715, 718–719, 90 L.Ed. 843 (1946); *Goodpasture v. Tennessee Valley Authority,* 434 F.2d 760, 763 (6th Cir. 1970). At one time it was nearly axiomatic that "the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Utah Power & Light Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917). This rule was applied in *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) to preclude recovery under the Federal Crop Insurance Act by a

wheat grower who had been assured orally by the FCIC's local agent that his crop was insured, when the crop had been reseeded contrary to the applicable regulation, despite the lack of knowledge by the wheat grower or the agent of the regulation. The Court stated: "The 'terms and conditions' defined by the Corporation, under authority of Congress, for creating liability on the part of the Government preclude recovery for the loss of the reseeded wheat no matter with what good reason the respondents thought they had obtained insurance from the Government." 332 U.S. at 385, 68 S.Ct. at 3.

District Judge Ballantine applied these principles in his decision granting TVA's motion to dismiss. He held that, even assuming as alleged by the plaintiffs that the TVA officers had made the oral assurances, these could neither bind nor estop the TVA in the exercise of its eminent domain power.

The doctrine of equitable estoppel as applied to the Government has undergone considerable development since *FCIC v. Merrill, supra.* In many cases, courts have applied or acknowledged a rule developed most vigorously by the Ninth Circuit, that the Government may be estopped if a party proves "affirmative misconduct" by the Government in addition to the four elements of an ordinary claim of estoppel. *See United States v. Ruby Co.,* 588 F.2d 697, 701–05 (9th Cir. 1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) for a discussion of the doctrine, and *United States v. Wharton,* 514 F.2d 406 (9th Cir. 1975) for a case in which the rule was applied to estop the Government. The viability and scope of this rule, and the subsidiary questions of whether "affirmative misconduct" is required or whether the rule may be applied only to the proprietary, rather than the sovereign, functions of the government, have engendered a conflict of authority among the federal courts. *Compare, e.g., United States v. Harvey,* 661 F.2d 767, 773–74 (9th Cir. 1981); *Champaign County, Illinois v. United States Law Enforcement Assistance Administration,* 611

F.2d 1200, 1205 (7th Cir. 1979); *Yang v. INS,* 574 F.2d 171, 175 (3rd Cir. 1978); *L'Enfant Plaza Properties, Inc. v. District of Columbia Redevelopment Land Agency,* 564 F.2d 515, 524 (D.C. Cir. 1977); with *Somerville Technical Services v. United States,* 640 F.2d 1276, 1282 (Ct.Cl.1981); *Hicks v. Harris,* 606 F.2d 65, 68 (5th Cir. 1979); *Air Sea Brokers, Inc. v. United States,* 596 F.2d 1008, 1011 (C.C.P.A.1979). For a collection of additional authorities, see Annotation, *Modern Status of Applicability of Doctrine of Estoppel Against Federal Government and its Agencies,* 27 A.L. R.Fed. 702 (1976).

The Supreme Court on several occasions has acknowledged the possibility that estoppel may arise against the federal government, but has declined to apply the rule in the absence of "affirmative misconduct" by the Government. In *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) the Court summarily reversed the holding of the Second Circuit that the Social Security Administration was estopped from denying benefits to a claimant because of a field representative's negligent failure to advise the claimant to fill out the proper application form. In finding that the representative's negligence could not estop the Government, the Court stated:

> This Court has never decided what type of conduct by a Government employee will estop the Government from insisting upon compliance with valid regulations governing the distribution of welfare benefits. In two cases involving denial of citizenship, the Court has declined to decide whether even "affirmative misconduct" would estop the Government from denying citizenship, for in neither case was affirmative misconduct" involved.

450 U.S. at 788, 101 S.Ct. at 1470–1471. *See also INS v. Hill,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973) ("While the issue of whether 'affirmative misconduct' on the part of the Government might estop it from denying citizenship was left open in *Montana v. Kennedy,* 366 U.S. 308, 314, 315, 81 S.Ct. 1336, 1340, 1341, 6 L.Ed.2d 313 (1961), no conduct of the sort there adverted to was involved here").

This court also has found in an alternative holding that estoppel may lie against the Government in an action brought under the Federal Tort Claims Act in which the Government representative had misinformed the claimant as to the necessary forms to be filed in order to recover. *Douglas v. United States,* 658 F.2d 445, 449 (6th Cir. 1981). *See also Johnson v. United States,* 602 F.2d 734, 739 (6th Cir. 1979).

In the present case, we find it unnecessary to reach the question of whether estoppel may ever arise against the TVA in the exercise of its eminent domain powers. TVA's motion for summary judgment was before the district court and the appellants had a fair opportunity to respond and in fact did respond expressly to that motion. We hold that the appellants have failed to show any genuine issue of material fact giving rise to a claim of estoppel. *See Bernitsky v. United States,* 620 F.2d 948, 956 (3rd Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

This holding is compelled by an examination of the documents and affidavits filed in the district court. Appellants in their response to the motion relied only on the facts as averred in their complaint. We take as uncontradicted the assertions in the TVA affidavits that no oral assurances were ever made and none were ever authorized regarding TVA's intentions to condemn the land north of Highway 176. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The appellants have failed to show any act by the TVA intended to induce or actually inducing reliance by the appellants. Without such a showing even an ordinary claim of estoppel may not lie. *See, e.g., United States v. Ruby Co., supra,* 588 F.2d at 703. We, therefore, need not decide the

question of whether "affirmative misconduct" is a necessary element to a claim of estoppel against the Government in this Circuit. We conclude that the resolution of this issue should await a case in which the facts are developed more fully in the record and the issue is more material to the outcome.

The judgment of the district court is affirmed. No costs are taxed. The parties will bear their own costs on this appeal.